**WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP**
Don Springmeyer
Nevada Bar No. 1021
Bradley S. Schrager
Nevada Bar No. 10217
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
(702) 341-5200/Fax: (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com
*Local Counsel for Plaintiff*
*(Additional counsel appear on signature page)*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| KATHERINE SEARS and VIRGINIA SEGANOS**,** individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>MID VALLEY ENTERPRISES, LLC and PAHRUMP ICS LLC, doing business as "SHERI'S RANCH**"**<br><br>    Defendants. | Case No.:<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT WITH JURY DEMAND** |

Plaintiffs KATHERINE SEARS and VIRGINIA SEGANOS, individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective and Class Action Complaint against Defendants, MID VALLEY ENTERPRISES, LLC and PAHRUMP ICS LLC, doing business as "SHERI'S RANCH**"**, (hereinafter referred to as "Defendants"), and state as follows:

### INTRODUCTION

1. Plaintiffs bring this action, individually and as a collective action on behalf of all other similarly situated Courtesans who elect to opt-in to this action to recover unpaid minimum wages, overtime wages, and tips unlawfully kept by Defendants, as well as liquidated damages, and reasonable attorneys' fees and costs as a result of Defendants' willful violations of the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.* and attendant regulations at 29 C.F.R. §516, *et seq.*

2.      In addition, Plaintiffs also bring this action, individually and as a Rule 23 class action on behalf of all other similarly situated Courtesans to recover unpaid minimum wages, overtime wages, liquidated damages, pre-judgment interest, and reasonable attorneys' fees and costs as a result of Defendants' violation of Nev. Rev. Stat. Ann. §§ 608.016 and 608.018, (collectively "NRS Chapter 608"), and Article 15, Section 16 of the Nevada Constitution (hereinafter "Article 15").

3.      Defendants jointly operate "Sheri's Ranch," a legal brothel located in Pahrump, Nevada. According to its website,[1] Sheri's Ranch is Nevada's "first and only full-service legal sex resort," and includes a hotel, restaurant, bungalows, and a variety of themed specialty rooms, as well as tennis courts, a spa, a massage room, and a swimming pool.

4.      The main attraction advertised on Sheri's Ranch's website is its "Weekly LineUp" of women titled "Courtesans," who work for Defendants as legal prostitutes, licensed by Nye County and the State of Nevada. The Plaintiffs both formerly worked as Courtesans for Defendants.

5.      Defendants classify their Courtesans as independent contractors. However, Courtesans qualify as "employees" of Defendants under the FLSA and NRS Chapter 608. *See Donovan v. Sureway Cleaner*s, 656 F.2d 1368, 1370 (9th Cir. 1981) ("There are six relevant factors that courts consider when determining if an individual is an 'employee' under the FLSA: 1) The degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the

---

[1] https://www.sherisranch.com/abouttheranch.aspx (last visited March 26, 2019).

1  degree of permanence of the working relationship; 6) whether the service rendered is an integral

2  part of the alleged employer's business.); *Terry v. Sapphire/Sapphire Gentlemen's Club*, 336 P.3d

3  951, 958 (Nev. 2014) (adopting the FLSA's "economic realities" test for employment in the

4  context of Nevada's minimum wage laws); Nev. Rev. Stat. Ann. § 608.0155 (setting forth criteria

5  for whether an individual should be "conclusively presumed to be an independent contractor").

6  For reasons alleged herein, Courtesans satisfy the requisite criteria for employment status under

7  the FLSA and NRS Chapter 608, and are thus entitled to minimum wages and overtime

8  compensation.

9       6.    Defendants maintain a "lockdown" policy under which Courtesans are required to

10  remain on the Ranch premises for periods ranging from one (1) to three (3) weeks at a time (with

11  at least one week between such periods) and work daily shifts of either twelve (12) or twenty-

12  four (24) hours, during which they are listed as "currently available" on Defendants' website and

13  must remain available to greet and/or line up for Defendants' patrons upon request.

14       7.    Courtesans are economically dependent on Defendants, as their compensation

15  consists entirely of a portion of the "price" each patron pays to Defendants after booking a

16  session, plus voluntary tips they occasionally receive directly from patrons.

17       8.    Defendants require each Courtesan to sign an "Independent Contractor

18  Agreement," which provides, in part, that "Owner agrees to pay Independent Contractor … [t]he

19  sum equal to 50% of all gross revenue collected by Owner in connection to legal brothel services

20  performed by Independent Contractor [i.e. prices and tips] less any expenses relating to such

21  revenue, including but not limited to daily rent, cost of meals, commissions of revenue to third

22  parties or Owner should owner provide such third party services, medical expenses, bar drinks,

23  or any other miscellaneous expense relating to Independent Contractor's work performed at the

24  Property."

25       9.    Defendants' method of compensating Courtesans violates the FLSA, NRS

26  Chapter 608, and Article 15 because:

27

28

a.   in many weeks, Courtesans' total non-tip compensation, net the amounts they are unlawfully required to "kick back" to Defendants, divided over the number of hours for which they are entitled to compensation, averages to below the applicable federal and Nevada minimum wage; *see* 29 C.F.R. § 4.167 ("The wage requirements of the Act will not be met where unauthorized deductions, rebates, or refunds reduce the wage payment made to the employee below the minimum amounts required under the provisions of the Act and the regulations thereunder, *or where the employee fails to receive such amounts free and clear because he "kicks back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to him*.") (emphasis added);

b.   Courtesans do not receive any form of overtime compensation for hours worked in excess of forty (40) in a workweek; and

c.   Defendants unlawfully keep 50% of all Courtesans' tips, in violation of 29 U.S.C. § 203(m)(2)(B).

10.   Plaintiffs bring this collective action pursuant to the FLSA, 29 U.S.C. § 216(b) on behalf of the "FLSA Collective," defined as:

> *All Courtesans who worked for the Defendants at any time during the period of three (3) years prior to the commencement of this action through the date of judgment.*

11.   Plaintiffs seek to send a notice pursuant to 29 U.S.C. § 216(b) to all FLSA Collective members permitting them to assert FLSA claims in this collective action by filing consent forms.

12.   Plaintiffs assert their NRS Chapter 608 and Article 15 claims on a class basis pursuant to Fed. R. Civ. P. 23 on behalf of the "Rule 23 Class," defined as:

> *All Courtesans who worked for the Defendants at any time from three (3) years prior to the filing of this Complaint through the date of judgment.*

13.   For at least three (3) years prior to the filing of this Complaint, Defendants have

willfully and intentionally committed widespread violations of the above-described statutes and corresponding regulations, in the manner described herein.

## JURISDICTION AND VENUE

14.     This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq*.

15.     The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367 because they derive from a common nucleus of operative facts as Plaintiffs' federal claims.

16.     This Court has personal jurisdiction over Defendants because they do business within the state of Nevada and are registered with the Nevada Department of the Secretary of State.

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants employ Courtesans in this district, and a substantial portion of the events that give rise to the Plaintiffs' claims occurred in this district.

## PARTIES

18.     Defendants jointly operate "Sheri's Ranch," a legal brothel located in Pahrump, Nevada.

19.     Defendant MID VALLEY ENTERPRISES, LLC is a domestic limited liability company registered with the Nevada Secretary of State (NV Business ID NV200001062518).

20.     Defendant MID VALLEY ENTERPRISES, LLC's designated agent for service of process in Nevada is Paracorp Incorporated, 318 North Carson St., No. 208, Carson City, Nevada 89701.

21.     Defendant PAHRUMP ICS LLC is a domestic limited liability company registered with the Nevada Secretary of State (NV Business ID NV200051218356).

22.    Defendant MID VALLEY ENTERPRISES, LLC's designated agent for service of process in Nevada is Paracorp Incorporated, 318 North Carson St., No. 208, Carson City, Nevada 89701.

23.    Plaintiff Katherine Sears is a citizen of Iowa who was employed by Defendants as a Courtesan from July 25, 2016 to September 2018. Plaintiff Sears' consent to join form is attached hereto as **Exhibit 1**.

24.    Plaintiff Sears regularly worked over forty (40) hours per week for Defendants, and was subject to the overtime and tip-keeping violations alleged herein.

25.    Plaintiff Virginia Seganos is a citizen of Idaho who was employed by Defendants as a Courtesan from March 2018 to February 2019. Plaintiff Seganos' consent to join form is attached hereto as **Exhibit 2**.

26.    Plaintiff Seganos regularly worked over forty (40) hours per week for Defendants, and was subject to the minimum wage, overtime, and tip-keeping violations alleged herein.

## **GENERAL ALLEGATIONS**

27.    Defendants are employers as defined under Nev. Rev. Stat. Ann. § 608.011 and 29 U.S.C. § 203(d) of the FLSA.

28.    Plaintiffs and other Courtesans were "employees" of Defendants within the meaning of Nev. Rev. Stat. Ann. § 608.011 and 29 U.S.C. § 203(e)(1) of the FLSA.

29.    Defendants were and continue to be "an enterprise engaged in commerce" within the meaning of the FLSA.

30.    Defendants' annual sales exceed $500,000 and upon information and belief they have more than two employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce.

31.    Courtesans are directly engaged in interstate commerce, including interacting with Defendants' patrons through Defendants' website and through the email accounts Defendants require them to use.

32.     Defendants "suffered or permitted" Plaintiffs and other Courtesans to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

33.     Defendants jointly operate "Sheri's Ranch," a legal brothel located in Pahrump, Nevada.

34.     Defendants and/or their ownership invest significant resources and capital to operate Sheri's Ranch and maximize its revenue, including:

    a.   Obtaining government licenses and permits;

    b.   Developing, maintaining, and staffing of the Ranch property and amenities (i.e. hotel, restaurant, bungalows, and a variety of themed specialty rooms, as well as tennis courts, a spa, a massage room, and a swimming pool);

    c.   Maintaining a staff of managers to supervise and direct Courtesans' work;

    d.   Maintaining a staff of drivers to transport Courtesans and patrons for short-distance trips (e.g. to McCarran Airport);

    e.   Maintaining an on-site third-party medical doctor to administer testing to Courtesans for sexually-transmitted diseases.

    f.   Operation of the Sheri's Ranch website, which includes a virtual "LineUp" of Courtesans at the Ranch at any given time, a searchable database of profiles of all Courtesans who work at the Ranch, a messenger service, a "Sex Menu," and a blog.

35.     Courtesans work for Defendants as legal prostitutes.

36.     Courtesans' primary duties are to greet and engage in fully consensual sexual and/or romantic activities with Defendants' patrons.

37.     Defendants require that to work as Courtesans, "ladies" must:

    a.   be at least 21 year old;

    b.   undergo testing for sexually-transmitted diseases, which is performed on-site by a third party medical doctor;

    c.   possess a Nye County Sheriff's Card and Nevada State Business License;

d. complete and sign documents including an "Independent Contractor Agreement," "Independent Contractor Waiver of Workers' Compensation Coverage," "Model Release / Independent Contractor Release," "Ladies Arrival and Departure Schedules Policy," "Ladies Rules of the House," "Ladies Procedures," and "E-mail Conduct and Forum Rules and Regulations," "Jacuzzi & Bubble Bath Rooms Rules of Operation," and "Tanning Bed Release of all Claims,";

e. undergo an orientation and photography session.

38. Defendants do not require Courtesans to have or use any special knowledge or skills in the course of their work.

39. Defendants maintain a "lockdown" policy under which Courtesans are required to remain on the Ranch premises for periods ranging from one (1) to three (3) weeks at a time (with at least one week between such periods) and work daily shifts of either twelve (12) or twenty-four (24) hours, during which they are listed as "currently available" on Defendants' website and must remain available to greet Defendants' patrons upon request.

40. Throughout their shifts, Defendants require Courtesans to greet and interact with their patrons in a variety of ways for the purpose of "booking" a session, including "casually mingl[ing]" with Patrons at the sports bar, appearing for mandatory "LineUps" in which "[a]ll the available courtesans in the house …lineup just for [any patron who requests] and introduce[s] themselves one by one," and communicating with patrons through the messenger service Defendants' operate as part of their website.[2]

41. Defendants impose strict requirements on the manner in which Courtesans greet and interact with patrons, including requiring them to report immediately for "bar calls" and line-ups throughout their shifts, prohibiting them from talking with any patron or group of patrons in

---

[2] *Brothel Newbie's Guide*, https://www.sherisranch.com/nevada-brothels/brothel-newbies-guide.aspx (last visited March 26, 2019).

1   the bar for more than 10 minutes at a time, and requiring them to respond to messages received

2   through Defendants' website within 24 hours.

3       42.     Defendants require Courtesans to follow a strict set of rules throughout their stays

4   at Sheri's Ranch, including:

5           a.  Requiring Courtesans to remain on the Ranch premises for the entirety of their

6               one-to-three-week stays (not only during their shifts), upon penalty of fines

7               ranging from $1,000 - $3,000;

8           b.  Requiring Courtesans to arrive by 1:00 PM on Mondays and depart by 12:00 PM

9               on Tuesdays;

10          c.  Requiring Courtesans to notify the Front House Manager of changes to their

11              schedules the Friday before their scheduled arrival dates;

12          d.  Requiring Courtesans to inform the Shift Manager before going outside or taking

13              showers;

14          e.  Prohibiting Courtesans from inviting others onto the Ranch premises;

15          f.  Requiring Courtesans to maintain profiles and messenger accounts on

16              Defendants' website and make their passwords available to Defendants at all

17              times;

18      43.     Defendants require each Courtesan to sign an "Independent Contractor

19   Agreement," which provides, in part, that "Owner [i.e. Defendants] agrees to pay Independent

20   Contractor [i.e. the Courtesan] … [t]he sum equal to 50% of all gross revenue collected by

21   Owner in connection to legal brothel services performed by Independent Contractor  less any

22   expenses relating to such revenue, including but not limited to daily rent, cost of meals,

23   commissions of revenue to third parties or Owner should owner provide such third party

24   services, medical expenses, bar drinks, or any other miscellaneous expense relating to

25   Independent Contractor's work performed at the Property (i.e. Sheri's Ranch)."

26

27

28

44.     The "gross revenue" collected by Defendants consists entirely of a portion of the "price" each patron pays to Defendants after booking a session, plus voluntary tips Courtesans occasionally receive directly from patrons.

45.     The tips Courtesans occasionally receive directly from patrons include both cash tips and non-monetary items such as gift cards.

46.      Most, if not all of the "expenses" Defendants deduct from Courtesans' "gross revenue" are unlawful "kick backs" because the items they purpose to reimburse—rent, meals, commissions to third parties, medical expenses, and bar drinks—are for Defendants' benefit, inasmuch as they protect patrons' safety from sexually-transmitted diseases, are incidental to each Courtesans' required round-the-clock availability, and/or otherwise contribute to "[t]he entire experience at Sheri's, from the companionship to the amenities to the cuisine," all of which "is designed for nothing less than [the patron's] absolute pleasure."[3]

47.     In addition to the amounts Defendants deduct from Courtesans' compensation before it is paid, Courtesans suffer from additional "kick backs" in the form of out-of-pocket expenditures that are primarily for the benefit of Defendants' and/or their patrons, including purchasing contraceptives Defendants require them to use and paying fees for required county and state licenses.

## COLLECTIVE ACTION ALLEGATIONS

48.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

49.     Plaintiffs assert the foregoing violations not only individually, but collectively pursuant to 29 U.S.C. 216(b) on behalf of the "FLSA Collective," defined as:

> *All Courtesans who worked for the Defendants at any time during the period of three (3) years prior to the commencement of this action through the date of judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserves the right to amend this

---

[3] https://www.sherisranch.com/abouttheranch.aspx (last visited March 26, 2019).

definition as necessary.

50.     With respect to the claims set herein, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The collective of employees on behalf of whom Plaintiffs bring this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

51.     The precise number and identities of Collective members should be readily available from a review of Defendants' personnel and payroll records.

52.     The Collective Action further alleges a willful violation of the FLSA and is covered by a third year of limitations.

53.     Defendants' conduct and practices, described herein, were and are willful, intentional, unreasonably, arbitrary, and in bad faith.

## RULE 23 CLASS ACTION ALLEGATIONS

54.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

55.     Plaintiffs bring this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All Courtesans who worked for the Defendants at any time from three (3) years prior to the filing of this Complaint through the date of judgment.*

(hereinafter referred to as the "Rule 23 Class").  Plaintiffs reserve the right to amend this definition as necessary.

56.     The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical.

57.     Rule 23 Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

58.     There is a well-defined community of interest among Rule 23 Class members and common questions of law and fact predominate in this action over any questions affecting

individual members of the Rule 23 Class.  These common legal and factual questions, include, but are not limited to, the following:

     a.    Whether Defendants' classification of Rule 23 Class members as independent contractors is unlawful;

     b.    Whether Rule 23 Class members' total non-tip compensation, net the amounts they were unlawfully required to "kick back" to Defendants, divided over the number of hours for which they are entitled to compensation, averages to below the Nevada minimum wage; and

     c.    Whether Rule 23 Class members are entitled to overtime compensation for hours worked in excess of eight (8) in a day and/or forty (40) in a week.

59.    Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices.  Plaintiffs' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Class members.

60.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Class and they have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

61.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

62.   This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendants have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

63.   Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

64.   Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I

(Brought by Plaintiffs individually and on a collective basis pursuant to 29 U.S.C. § 216(b))
**Violation of the Fair Labor Standards Act, 29 U.S.C. § 206(a)**
**FAILURE TO PAY MINIMUM WAGE**

65.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

66.   29 U.S.C. § 206(a) provides:

Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages [of $7.25 per hour].

67.   29 C.F.R. § 531.35 provides:

"Free and clear" payment; "kickbacks."
Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools

> purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act. See also in this connection, § 531.32(c).

68.     At all relevant times, Defendants have been, and continue to be, an "employer" within the meaning of the FLSA, 29 U.S.C. § 203.

69.     At all relevant times, Courtesans have been, and continue to be, "employees" within the meaning of the FLSA, 29 U.S.C. § 203.

70.     The FLSA defines an "employee" broadly: as "any individual employed by an employer;" and it defines "employ" as "to suffer or permit to work." 29 U.S.C. § 203(e)(1), (g). Courts apply that broad definition to specific cases by using an "economic realities test" to determine whether someone falls under the FLSA's definition of an "employee." *Benjamin v. B & H Educ., Inc.*, 877 F.3d 1139, 1145 (9th Cir. 2017).

71.     There are six relevant factors that courts consider when determining if an individual is an "employee" under the FLSA:

> 1) The degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981) (citation omitted). Neither factor is dispositive; and the overall focus is to determine if the individuals are "dependent upon the business to which they render service." *Id.*

72.     Defendants violated the FLSA minimum wage requirement because in many weeks, Plaintiffs' and other FLSA Collective members' total non-tip compensation, net the amounts they were unlawfully required to "kick back" to Defendants, divided over the number of hours for which they are entitled to compensation, averaged to below the applicable federal minimum wage ($7.25 per hour).

73.    Defendants knew, or acted with reckless disregard as to whether FLSA Collective members' total net non-tip compensation averaged to below $7.25 per hour, and Defendants were on notice of the FLSA's requirements at all relevant times. As such, Defendants' conduct constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a). Because Defendants willfully violated the FLSA, a three-year state of limitations applies to such violations.

74.    Pursuant to 29 U.S.C. §§ 206 and 216(b), Plaintiffs are entitled to recover the full amount of unpaid minimum wage compensation, liquidated damages, interest thereon, reasonable attorneys' fees and costs of suit.

**COUNT II**
(Brought by Plaintiffs individually and on a collective basis pursuant to 29 U.S.C. § 216(b))
**29 U.S.C. § 207(a)(1)**
**FAILURE TO PAY OVERTIME**

75.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

76.    29 U.S.C. § 207(a)(1) provides:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

77.    Plaintiffs and other FLSA Collective members regularly worked over forty (40) hours a week as required by Defendants.

78.    Plaintiffs and other FLSA Collective members did not receive any form of overtime compensation for hours worked in excess of forty (40) in a workweek.

79.    Defendants knew, or acted with reckless disregard as to whether FLSA Collective members' were entitled to overtime compensation for hours worked in excess of forty (40) in a workweek, and Defendants were on notice of the FLSA's requirements at all relevant times. As such, Defendants' conduct constitutes a willful violation of the FLSA, within the meaning of 29

U.S.C. § 255(a). Because Defendants willfully violated the FLSA, a three-year state of limitations applies to such violations.

80.     Pursuant to 29 U.S.C. §§ 207 and 216(b), Plaintiffs are entitled to recover the full amount of unpaid overtime compensation, liquidated damages, interest thereon, reasonable attorneys' fees and costs of suit.

**<u>COUNT III</u>**
(Brought by Plaintiffs individually and on a collective basis pursuant to 29 U.S.C. § 216(b))
**29 U.S.C. § 203(m)(2)(B)**
**UNLAWFUL KEEPING OF TIPS**

81.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

82.     The FLSA, Section 203(m)(2)(B), provides:

> An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.

83.     Gratuities/tips are the property of the employee, even when the employer has not taken a tip credit:

> Tips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA. The employer is prohibited from using an employee's tips, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted in section 3(m): As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool.

29 C.F.R. § 531.52

84.     Employer-mandated tip pools can only share gratuities/tips with other tipped employees:

> [V]alid mandatory tip pools . . . can only include those employees who customarily and regularly receive tips. However, *an employer may not retain any of the employees' tips for any other purpose*.

29 C.F.R. § 531.54 (emphasis added).

85.     The FLSA, Section 216(b), provides employees with a private right of action against their employers for violating these tip-pooling laws:

> Any employer who violates section 3(m)(2)(B) [29 USC § 203(m)(2)(B)] shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b)

86.    Defendants violated the FLSA by keeping 50% of the gratuities/tips received by Plaintiffs and all similarly situated Courtesans.

87.    Defendants knew, or acted with reckless disregard as to whether the retention of their employees' tips would violate federal law and Defendants were on notice of the FLSA's requirements at all relevant times. As such, Defendants' conduct constitutes a willful violation of the FLSA.

88.    Because Defendants willfully violated the FLSA, a three (3) year statute of limitations shall apply to such violation pursuant to 29 U.S.C. § 255(a).

89.    Plaintiffs and all similarly situated Courtesans are therefore entitled to the full amount of their unlawfully retained tips, plus additional amounts for liquidated damages, reasonable attorneys' fees, and costs. 29 U.S.C. § 216(b).

**<u>COUNT IV</u>**
(Brought by Plaintiffs individually and on a class basis pursuant to Rule 23)
**(Article 15, Section 16 of the Nevada Constitution )**
**FAILURE TO PAY MINIMUM WAGE**

90.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

91.    Article 15 provides:

> Each employer shall pay a wage to each employee of not less than the hourly rates set forth in this section. The rate shall be five dollars and fifteen cents ($5.15) per hour worked, if the employer provides health benefits as described herein, or six dollars and fifteen cents ($6.15) per hour if the employer does not provide such benefits. Offering health benefits within the meaning of this section shall consist of making health insurance available to the employee for the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer. These rates of wages shall be adjusted by the amount of increases in the federal minimum wage over $5.15 per hour, or, if greater, by the cumulative increase in the cost of living.

Nev. Const. art. 15, § 16(A).

92.     Currently, as adjusted and annually announced by the Office of the Labor Commissioner, the upper-tier minimum wage is $8.25 per hour, and the lower-tier minimum wage is $7.25. *See* Press Release, State of Nevada Department of Business and Industry, *State of Nevada Minimum Wage 2018 Annual Bulletin* (April 1, 2018), available at http://labor.nv.gov/uploadedFiles/labornvgov/content/About/Forms/2018%20Annual%20Bulleti n%20-%20Minimum%20Wage.pdf (lasted visited March 8, 2019).

93.     To pay an employee the lower-tier minimum wage, the employer must "provide[] health benefits" to the employee. Nev. Const. art. 15, § 16. To provide health benefits means to make health insurance available to an employee and his or her dependents at a total cost to the employee for premiums not more than 10 percent of the employee's gross taxable income. *Id*.

94.     Defendants do not provide health benefits to their Courtesans, and thus are required to pay the upper-tier minimum wage of $8.25 per hour.

95.     Defendants violated the Nevada minimum wage requirement because in many weeks, Plaintiff s' and other Rule 23 Class members' total non-tip compensation, net the amounts they were unlawfully required to "kick back" to Defendants, divided over the number of hours for which they are entitled to compensation, averaged to below the applicable Nevada minimum wage ($8.25 per hour).

96.     Wherefore, Plaintiffs demand for themselves and for the Rule 23 Class Members payment by Defendants at the minimum wage rate for all hours worked during the relevant time period together with attorneys' fees, costs, and interest as provided by law.

## COUNT V
(Brought by Plaintiffs individually and on a class basis pursuant to Rule 23)
**(Nev. Rev. Stat. Ann. § 608.016)**
**FAILURE TO PAY FOR EACH HOUR WORKED**

97.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

98.     NRS 608.140 provides that an employee has a private right of action for unpaid wages: "Whenever a mechanic, artisan, miner, laborer, servant or employee shall have cause to

1  bring suit for wages earned and due according to the terms of his or her employment, and shall

2  establish by decision of the court or verdict of the jury that the amount for which he or she has

3  brought suit is justly due, and that a demand has been made, in writing, at least 5 days before suit

4  was brought, for a sum not to exceed the amount so found due, the court before which the case

5  shall be tried shall allow to the Plaintiff a reasonable attorney fee, in addition to the amount

6  found due for wages and penalties, to be taxed as costs of suit."

7       99.    NRS 608.016 states that "An employer shall pay to the employee wages for each

8  hour the employee works." Hours worked means any time the employer exercises "control or

9  custody" over an employee. See NRS 608.011 (defining an "employer" as "every person having

10  control or custody . . . of any employee."). Pursuant to the Nevada Administrative Code, hours

11  worked includes "all time worked by the employee at the direction of the employer, including

12  time worked by the employee that is outside the scheduled hours of work of the employee."

13  NAC 608.115(1).

14       100.    By failing to provide Plaintiffs and Rule 23 Class Members any hourly

15  compensation, Defendants failed to pay Plaintiffs and Rule 23 Class Members for all hours

16  worked in violation of NRS 608.140 and 608.016.

17       101.    Although the statute of limitations for minimum wage violations is two years,

18  there is no express statute of limitations for violations of NRS 608.140 and 608.016 and,

19  therefore, the three-year statute contained in NRS 11.190(3) for statutory violations applies.

20       102.    Wherefore, Plaintiffs demand for themselves and for the Rule 23 Class Members

21  payment by Defendants for all hours worked during the relevant time period together with

22  attorneys' fees, costs, and interest pursuant to N.R.S. § 608.140.

23             **<ins>COUNT VI</ins>**
    (Brought by Plaintiffs individually and on a class basis pursuant to Rule 23)

24            **(Nev. Rev. Stat. Ann. § 608.018)**
           **FAILURE TO PAY OVERTIME**

25

26       103.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

27

28

104.    NRS 608.140 provides that an employee has a private right of action for unpaid wages.

105.    NRS 608.018(1) provides as follows:

> An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works: (a) More than 40 hours in any scheduled week of work; or (b) More than 8 hours in any workday unless by mutual agreement the employee works a scheduled 10 hours per day for 4 calendar days within any scheduled week of work.

106.    NRS 608.018(2) provides as follows:

> An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works more than 40 hours in any scheduled week of work.

107.    Plaintiffs and other Rule 23 Class members regularly worked over forty (40) hours a week as required by Defendants.

108.    Plaintiffs and other Rule 23 Class members did not receive any form of overtime compensation for hours worked in excess of forty (40) in a workweek.

109.    Plaintiffs and other Rule 23 Class members regularly worked over eight (8) hours per day as required by Defendants.

110.    Plaintiffs and other Rule 23 Class members did not receive any form of overtime compensation for hours worked in excess of eight (8) in a workday.

111.    Although the statute of limitations for minimum wage violations is two years, there is no express statute of limitations for violations for failure to pay overtime rates of pay pursuant to NRS 608.140 and 608.018 and, therefore, the three-year statute contained in NRS 11.190(3) for statutory violations applies.

112.    Accordingly, Plaintiffs and the Rule 23 Class are entitled to recover unpaid overtime wages owed, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under N.R.S. § 608.140.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs, Katherine Sears and Virginia Seganos, respectfully request that this Court grant the following relief against Defendants:

       a.     A declaratory judgment that Defendants' wage practices alleged herein violate the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and attendant regulations at 29 C.F.R. § 516, et seq.;

       b.     A declaratory judgment that Defendants' wage practices alleged herein violate NRS Chapter 608 and Article 15;

       c.     An Order for injunctive relief ordering Defendants to comply with the FLSA, NRS Chapter 608 and Article 15, and end all of the illegal wage practices alleged herein;

       d.     Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Counts I, II, and III);

       e.     Certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claims (Counts IV. V, and VI);

       f.     Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA Collective members and Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

       g.     Entering an order authorizing Plaintiffs' counsel to send notice(s) of this action to all FLSA collective and Rule 23 class members, including the publishing of notice in a manner that is reasonably calculated to apprise

the FLSA collective members of their rights by law to join and participate in this lawsuit;

h.      Entering an order designating Plaintiffs as the representatives of the FLSA Collective and Rule 23 class in this action;

i.      Entering an order designating the undersigned counsel as counsel for the FLSA Collective and Rule 23 Class in this action;

j.      Entering judgment for damages for all unpaid minimum wage and overtime compensation, unlawfully kept tips, and liquidated damages to which Plaintiffs and the FLSA collective members are lawfully entitled under the FLSA, 29 U.S.C. § 201, *et seq.,* and attendant regulations at 29 C.F.R. § 516, *et seq.*;

k.      Entering judgment for damages for all unpaid minimum wage and overtime compensation and pre-judgment interest to which Plaintiffs and the Rule 23 class members are lawfully entitled under the violated NRS Chapter 608 and Article 15;

l.      Entering an order for an incentive award for the Lead Plaintiffs for serving as representatives of the FLSA Collective and Rule 23 class in this action;

m.      Declaring that Defendants willfully violated the FLSA and the Department of Labor's attendant regulations as cited herein;

n.      Declaring that Defendants violated NRS Chapter 608 and Article 15 and that said violations were intentional, willfully oppressive, fraudulent and malicious;

o.      Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in this action as provided by the FLSA and NRS Chapter 608;

p.      Entering judgment for any and all civil penalties to which Plaintiffs and the FLSA Collective and Rule 23 class members may be entitled; and

q.      Awarding such other and further relief as this Court deems necessary, just

and proper.

## JURY DEMAND

Plaintiffs, Katherine Sears and Virginia Seganos, individually and on behalf of all other FLSA collective and Rule 23 Class members, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above claims.

DATED March 29, 2019

**WOLF, RIFKIN, SHAPIRO,
SCHULMAN & RABKIN, LLP**

By:    /s/ Don Springmeyer
Don Springmeyer
Nevada Bar No. 1021
Bradley S. Schrager
Nevada Bar No. 10217
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
(702) 341-5200/Fax: (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com

Jason T. Brown (*Pro hac vice to be submitted*)
Nicholas Conlon (*Pro hac vice to be sumbitted*)
**BROWN, LLC**
111 Town Square Place, Suite 400
Jersey City, NJ 07310
Phone: (201) 630-0000
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

*Counsel for Plaintiffs*